(March 22, 1907.)

GUSTAVE KROEGER, Appellant, v. J. R. GOOD et al., Respondents.

[89 Pac. 632.]

CONTRACT FOR SALE OF REAL ESTATE—CONSTRUCTION OF.

1. In the construction of a contract that possessed on its face a patent ambiguity, it should be construed and interpreted in the light of the facts and circumstances surrounding its making.

2. Where it appears that K. was desirous of purchasing a certain lot or tract of land, and went to G., R. & S., who were real estate agents, and they informed him that they had a letter from the owner in which she offered to take $1,700 for the tract, and that they would endeavor to procure it for him for $1,760, $100 to be paid down, and the balance to be paid as soon as the deed could be procured; thereupon, G., R. & S. communicated with the owner, and informed her that they had a purchaser at $1,700; she thereupon refused to take less than $2,000 for said land, and so informed

them by letter, which letter was exhibited to K.; they thereafter, at the request of K., had further communication with the owner in regard to the matter, and she absolutely refused to convey the lot for less than $2,000; they thereupon tendered K. back the $100, which he refused to accept. *Held,* under the facts and circumstances of the case, that K. is only entitled to the return of the $100, as G., R. & S. acted in perfect good faith, and did all in their power to procure the title of said land for K.

(Syllabus by the court.)

APPEAL from the District Court of Third Judicial District for Ada County. Hon. George H. Stewart, Judge.

Action to recover $890 damages for failure to procure title to real estate. Judgment for the plaintiff for $100, from which this appeal was taken by the plaintiff. *Judgment affirmed.*

Karl Paine and Charles H. Jackson, for Appellant.

The point at issue is whether the instrument set out in the bill of exceptions is a receipt and contract or a mere receipt. When a contract is signed by one of the parties only, but is accepted and acted on by the other party, it is just as binding as if it were signed by both of the parties. (9 Cyc. 300.)

In construing a writing it is a well-settled rule of construction that words will be construed most strongly against the party who used them. (9 Cyc. 590, note and cases cited thereunder.)

The writing in the case at bar contains all the essential elements of a contract, viz., the parties, the subject matter, the consideration, the terms of the sale.

In all the cases wherein the courts have distinguished receipts from contracts they have pointed out that after the receipt itself was complete some additional words had been used which indicated the contractual nature of the writing. (*Marks v. Cass Mill & Elevator Co.,* 43 Iowa, 146; *Goodyear v. Ogden & Pearl,* 4 Hill, 104; *Cohen v. Jackaboice,* 101

Mich. 409, 59 N. W. 665; *Schultz v. Coon,* 51 Wis. 416, 37 Am. Rep. 839, 8 N. W. 285.)

The words "as soon as deed can be procured" clearly refer to time, and where, in such a case, no definite date is fixed in a writing for the completion of anything to be done or paid, the court will presume that the price will be paid or the thing will be done within a reasonable time. (*Eppich v. Clifford,* 6 Colo. 493; *Niles v. Culver,* 8 Barb. 205.)

No fraud or mistake is alleged, and the parties were bound by the terms of the contract, and by inference and conclusions which the law might draw from it. (*Niles v. Culver.* 8 Barb. 209.)

J. C. Watts, and Perky & Blaine, for Respondents.

So far as the contract shows on its face, there is no obligation whatever on the part of the respondents except to apply the $100 on the purchase price of said lot. They do not undertake to sell the lot or to procure a deed for it. So far as appears from the contract itself, they are simply a depository, presumably for the convenience of the appellant and the owner of the lot. It is evident from the words "as soon as deed can be procured," that the respondents were not owners of the lot. Also that respondents did not receive said payment at the request of the owner or as agents for the owner, for nowhere in a contract is the owner's name disclosed, nor do they sign as agents for the owner.

To fall within the class of instruments, the receipt in question would have to so state its terms that a valid conveyance could be drawn therefrom without consulting any other source, by including the express stipulations of the contract and naming the parties thereto with sufficient identity. (Browne's Statute of Frauds, sec. 371a, 372, 376; *Nichols v. Johnson,* 10 Conn. 192; *Sheid v. Stamps,* 34 Tenn. (2 Sneed) 172; *Lewis v. Wood,* 153 Mass. 321, 26 N. E. 862, 11 L. R. A. 143; *Ross v. Allen,* 45 Kan. 231, 25 Pac. 570, 10 L. R. A. 835; *Fisher v. Buchanan* (Neb.), 96 N. W. 339.)

The writing in controversy in this action does not satisfy these requirements. It does not identify the owner, or refer

to her in any manner; it fails to show that the contract was made by or in behalf of the owner, or who was to convey the property or execute the deed; it fails to show that anyone agreed to make a conveyance or execute a deed. (*McGovern v. Hern,* 153 Mass. 308, 25 Am. St. Rep. 632, 26 N. E. 861, 10 L. R. A. 815; *Sherburn v. Shaw,* 1 N. H. 157, 8 Am. Dec. 47; *Ross v. Allen, supra.*)

SULLIVAN, J.—The appellant brought this action to recover $890 with interest thereon, as damages sustained for the breach of a contract for the sale of certain real estate. The respondents denied that they entered into any contract with the appellant to sell or convey to him the property in question, and plead a tender of $100, that being the sum paid to the appellant on the alleged contract. Upon a trial by the court without a jury, judgment was entered in favor of appellant for $100 without costs.

The real point in issue in this controversy is whether the following instrument, which is the instrument sued on in this action, is a receipt and contract for the sale of said lot, or merely a receipt, to wit:

"Office of Good & Roberts.

"Boise, Idaho, Nov. 7, 1905.

"Received of Gustave Kroeger One Hundred Dollars 1st payment Lot 4, Vesey Park, balance 1660, to be paid as soon as deed can be procured.

"$100.00

"(Signed)    GOOD, ROBERTS & SCHOOLER."

It is admitted that the appellant paid to the respondents $100, and that the sum is receipted for in said writing, and that upon the payment thereof the respondents executed and delivered to the appellant the said instrument. It appears from the stipulated facts that said writing, which we will hereafter refer to as the receipt, was executed under the following circumstances:

On or about the seventh day of November, 1905, the appellant called on the respondents at their place of business in Boise

City and inquired of them if they had lot No. 4 of Vesey Park addition to Boise for sale, and they informed him that the only authority they had was contained in a letter from the owner, which letter was then and there exhibited to the plaintiff; that appellant read said letter and agreed with respondents to pay them a commission of $60 for their services provided they secured him a deed to said property; that the respondents did not agree to sell to appellant said property, but the agreement of the parties was that the appellant was to pay to the respondents a commission of $60 for their services as his agents, provided they secured him a deed to said property. That receipt is the only writing that passed between them. Thereafter respondents opened a correspondence with the owner of said lot and informed her that they had an offer of $1,700 for said lot and that $100 had been deposited with them to apply thereon, whereupon they received a letter from the owner stating that she had decided to ask $2,000 for said lot, which letter, after its receipt by the respondents, was shown to appellant; that thereupon respondents advised appellant to pay the extra price and take said property, which appellant declined to do, and requested respondents to further correspond with the owner with a view of getting said property at $1,700. Respondents thereupon again wrote to the owner and received a reply declining said offer, but offering to sell for $2,000, which letter was, upon its receipt, shown to the appellant. The appellant then and there declined to purchase said lot for $2,000, and thereupon respondents offered to return to him the $100 deposited with them, but the appellant did not accept said money but requested defendants to retain the same until he could determine what his rights were in the premises and whether he had a cause of action against the owner of said lot; that no demand or request was thereafter made upon respondents, or either of them, for the return of said $100 until on or about the first day of April, 1906, at which time counsel for appellant called upon them and demanded from them the sum of $890, explaining that the demand was for the $100 deposited as aforesaid and $790

for damages; that respondents then and there tendered to said counsel the $100, stating it to be the return of the $100 deposited with them by the appellant, but counsel refused to accept same unless the respondents would pay the further sum of $790; that ever since the plaintiff declined to accept the owner's offer to sell at $2,000, respondents have been ready, willing and able to return said sum of $100, and that they tendered the same before the commencement of this action.

Upon those stipulated facts, the trial court found that the respondents "did not agree by executing and delivering to the plaintiff the writing of which Exhibit 'A' is a copy (that being the receipt above referred to), and by receiving from plaintiff the sum of $100 as stated in said exhibit, to sell said lot to plaintiff; that defendants being unable to procure a deed from the owner of said lot, were not liable in damages to plaintiff for failure to convey said lot, or to cause it to be conveyed, to plaintiff." And the court further found that the respondents' failure to procure title to said lots for the appellant was not attributable to any fault or negligence on their part.

It is clear to us that the appellant was cognizant of the fact that the respondents were real estate brokers, and that they did not have the title to said property at the time said receipt was given, and that the appellant knew that respondents could not procure the title unless the owner saw fit to convey, and from the facts and circumstances we cannot conclude that the respondents intended to guarantee to the appellant that they would procure title for said sum of money. They had a letter from the owner in which she stated that she would accept the offer of $1,700 for said lot, which they exhibited to the appellant at the time said transaction occurred. There was not an intimation in the record but what the respondents acted in perfect good faith, and did endeavor to procure a conveyance from the owner of said lot to the appellant, and the owner absolutely refused to accept less than $2,000 therefor.

That receipt must be interpreted in the light of the circumstances and facts surrounding its making. It is said in 2 Page on Contracts, section 1123: "It is a recognized rule of construction that the court will place itself in the position of the parties who made the contract as nearly as can be done, by admitting evidence of the surrounding facts and circumstances, the nature of the subject matter, the relation of the parties to the contract, and the objects sought to be accomplished by the contract."

The receipt on its face perhaps does indicate that the respondents were the owners of said lot, or that they had it within their power to secure a conveyance of it to the appellant. If that were true, then a court of equity would compel them to pay whatever damages the appellant had sustained by reason of their failure to do so. But as the appellant knew that the conveying of the title could not be controlled by the respondents, that it was solely at the option of the owner to convey or not, we do not think said receipt should be interpreted in a manner to do any injustice to either of the parties. We think it would be most unjust, under the circumstances and facts of this case, to require the respondents to pay to the appellant the sum of $790 as damages when he knew at the time of the transaction that the defendants did not intend to guarantee to him that they would procure the title, and well knew that the procuring of the title depended upon the will of the owner.

The defendants have offered to, and are ready and willing to, return the $100 deposited with them on said contract, and we think that is all they are required to do under the facts of this case.

The judgment must, therefore, be affirmed, and it is so ordered. Costs are awarded to the respondents.

Ailshie, C. J., concurs.